# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEEE
### NASHVILLE DIVISION

CHONTEL BRIDGEMAN,

        PLAINTIFF,

v.                                                      Case No.

WESTERN GOVERNORS
UNIVERSITY,

        DEFENDANT.

## VERIFIED COMPLAINT FOR
## VIOLATIONS OF TITLE VII

**COMES NOW** Plaintiff Chontel Bridgeman (hereinafter "Plaintiff" or "Dr. Bridgeman"), by and through undersigned counsel, and files this Complaint against Defendant Western Governors University (hereinafter "WGU" or "Defendant") for violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and in support states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant based on racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*

2. Plaintiff is a former employee of Defendant who alleges that Defendant discriminated against her on the basis of race, retaliated against her for reporting this discrimination, culminating in Defendant terminating her for her participation in the protected activity of reporting discrimination and retaliation.

3. Defendant's actions are in direct violation of Title VII and the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

1

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

4. Plaintiff seeks money damages as permitted by applicable law; attorneys' fees, costs, and expenses incurred in this action.

## PARTIES

5. Plaintiff, Dr. Chontel Bridgeman, is an adult resident of Jackson, Tennessee.

6. Defendant Western Governors University is a nonprofit corporation organized under the laws of Utah and doing business in throughout Tennessee. Its principal office is located at 4001 S. 700 E., Suite 700, Salt Lake City, Utah, 84107.

7. Defendant may be served with process through its registered agent, Cogency Global, Inc. 992 Davidson Drive, Suite B, Nashville, TN 37205.

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1311 because this case is brought under Title VII, 42 U.S.C. § 2000e *et seq.*

8. Defendant is registered and subject to service of process in Tennessee, employees Tennessee citizens, maintains an office, and does business in the state of Tennessee. Therefore, this Court has personal jurisdiction over Defendant.

9. Venue for this action is proper in this Court and County pursuant to Tenn. Code Ann. § 20-4-101. The facts and circumstances which give rise to the causes of action contained within this Complaint occurred in Davidson County, Tennessee, and within this Judicial District.

## FACTUAL ALLEGATIONS

10. Defendant WGU is a virtual, private and non-profit university which offers Bachelors and Masters degrees.

11. WGU operates a regional office in Tennessee, located at 501 Corp. Centre Drive, #390, Franklin, Tennessee 37067.

2

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

12. In 2013, Plaintiff Chontel Bridgman began working for WGU as an Evaluator.

13. As an Evaluator, Dr. Bridgeman's primary job duty was assessing and grading WGU student's work.

14. In August 2020, WGU promoted Dr. Bridgeman to the role of Supervisor in the Educational Leadership department.

### *Dr. Bridgeman's Involvement in the Investigation of Manager Kerry McShea*

15. From approximately September 2021 to February 2022, Dr. Bridgeman participated in WGU's internal investigation into employee complaints about racial discrimination and retaliation against WGU Manager Kerry McShea.

16. At the time, Manager McShea was Dr. Bridgeman's superior on the Educational Leadership team.

17. As part of the investigation, Dr. Bridgeman candidly shared her own experiences of discrimination while working as a subordinate under Manager McShea.

18. Manager McShea threatened Dr. Bridgeman, warning her that due to her candid participation in the investigation WGU's Vice President of Evaluation Operations Kirk Welter was going to disband the Educational Leadership team and assign Dr. Bridgeman more work and more direct reports.

19. In approximately March 2022, Dr. Bridgeman filed her own formal internal complaint with WGU about Manager McShea's racial discrimination and retaliation.

20. As part of her March 2022 complaint, Dr. Bridgeman emailed a written timeline outlining Manager McShea's discriminatory and retaliatory actions to WGU Human Resources Representatives Teneal Taylor and WGU's Vice President of Evaluation Operations Kirk Welter.

3

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

21. On or about March 1, 2022, WGU transferred Manager McShea to work as a Manager for another team.

### *Dr. Bridgeman Endures Retaliatory Harassment from WGU*

22. The 2022 responses from an anonymous survey of Dr. Bridgeman's direct-reports show that Dr. Bridgeman received overwhelmingly favorable reviews from her subordinate employees.

23. On or about June 30, 2022, WGU gave Dr. Bridgeman a performance-based pay raise and a one-time performance-based bonus in recognition of her excellent employee performance throughout the year.

24. In approximately June 2022, WGU disbanded the Educational Leadership team, as Manager McShea had forewarned, and transferred a majority of the employees working for Educational Leadership, including Dr. Bridgeman, to new teams.

25. WGU transferred Dr. Bridgeman to work in the Curriculum & Instruction team under Manager Shelly Sinclair.

26. Manager Sinclair almost immediately began to subject Dr. Bridgeman to an unusually heavy workload, heightened scrutiny, and unwarranted criticism.

27. Less than a week after her transfer, Manager Sinclair assigned Dr. Bridgeman twenty-five direct reports, more than doubling Dr. Bridgeman's normal workload.

28. WGU policy instructed that Supervisors, like Dr. Bridgeman, were to be assigned seventeen direct-reports.

29. Manager Sinclair required Dr. Bridgeman to complete all the same trainings as brand-new hires and to evaluate tasks, while continuing to fulfill her regular job duties as Supervisor.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

30. Manager Sinclair required Dr. Bridgeman to attend CRD meetings, although these meetings frequently fell outside of Dr. Bridgeman's normal work hours.

31. WGU policy does not require Supervisors, like Dr. Bridgeman, to attend CRD meetings.

32. Manager Sinclair required Dr. Bridgeman to submit a weekly schedule to her for approval.

33. Other Supervisors were not expected or required to engage in the time-consuming process of drafting a weekly schedule. In fact, Dr. Bridgeman was the only Supervisor required to submit these weekly schedules.

34. On occasions that Dr. Bridgeman did not timely submit a weekly schedule, Manager Sinclair sent her harshly critical emails accusing her of failing to do her job.

35. On multiple occasions between June and August 2022, Manager Sinclair repeatedly reprimanded Dr. Bridgeman for not completing work on schedule.

36. Manager Sinclair's reprimands were surprising because Dr. Bridgeman was completing her work based on the deadlines set forth in the weekly schedule that she was required to submit to Manager Sinclair.

### *Dr. Bridgeman's Complaints to WGU and WGU's Escalating Retaliation*

37. On or about August 2, 2022, Dr. Bridgeman emailed Vice President of People & Talent Sara Reed ("Vice President Reed") to express her concerns that WGU's reorganization and Manager Sinclair's hostile treatment was in retaliation against Dr. Bridgeman for her participation in the internal investigation of Manager McShea.

38. Between August 2, 2022 and August 4, 2022, Dr. Bridgeman was sick and absent from work at WGU.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

39. Dr. Bridgeman reported her illness and anticipated absence to Manager Sinclair on August 1, 2022, in accordance with WGU's policies; Manager Sinclair approved the absence and told Dr. Bridgeman to "feel better."

40. Subsequently, Dr. Bridgeman submitted absence requests to and received approval for her absences through the Workday application, in accordance with WGU's established attendance policies.

41. After Dr. Bridgeman returned to work, WGU's Director of Evaluations Avril Smart-Goggins ("Director Smart-Goggins") informed Dr. Bridgeman that Manager Sinclair had accused Dr. Bridgeman of "job abandonment" while she was absent for her illness.

42. On or about August 18, 2022, Manager Sinclair emailed Dr. Bridgeman and copied Senior Manager Courtney Munday ("Senior Manager Munday"). In this email, Manager Sinclair reprimanded Dr. Bridgeman for allegedly failing to complete a specific training requirement on time.

43. This email reprimand surprised Dr. Bridgeman, as Manager Sinclair had already reviewed and approved of Dr. Bridgeman's weekly schedule which explicitly stated that she would complete this training requirement at a later date.

44. On or about August 18, 2022, Dr. Bridgeman contacted HR Representative Teneal Taylor ("HR Representative Taylor") and Vice President Reed seeking to file a complaint against Manager Sinclair for retaliation, harassment and the creation of a hostile work environment.

45. On or about August 22, 2022, Dr. Bridgeman emailed a complaint about Manager Sinclair's racially discriminatory and potentially retaliatory harassment to Director Smart-Goggins and HR Representative Taylor.

6

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

46. Director Smart-Goggins and HR Representative Taylor took no action in response to Dr. Bridgeman's complaints.

47. The stress created by working a heavier workload, under heightened scrutiny, while being subjected to unwarranted criticism began to take a toll on Dr. Bridgeman's health. On or about September 1, 2022, Dr. Bridgeman began approved, continuous FMLA leave.

48. WGU had approved Dr. Bridgeman to take continuous FMLA leave from September 1, 2022 to October 29, 2022.

49. While on leave, on or about September 8, 2022, Dr. Bridgeman saw that WGU had underpaid her for paid time-off and her hours worked prior to taking leave.

50. That same day, Dr. Bridgeman emailed WGU President Scott Pulsipher and Director Reed and expressed her concern that the underpayment was in retaliation for her complaints about Manager Sinclair's harassment.

51. On September 12, 2022, Director Reed and People & Talent Representative Jamila Pittman ("Representative Pittman") met with Dr. Bridgeman, ostensibly to discuss her complaints related to discrimination and retaliation.

52. During this meeting, Representative Pittman questioned Dr. Bridgeman almost exclusively about Manager Sinclair's criticisms of Dr. Bridgeman's alleged performance deficiencies.

53. During this meeting, Representative Pittman barely mentioned Dr. Bridgeman's complaints of discrimination and retaliation against Manager Sinclair. When Dr. Bridgeman expressed her concerns about the failure to discuss her concerns or complaints, Representative Pittman instructed Dr. Bridgeman to send her a copy of the complaint and her supporting materials and set up a separate meeting to discuss her complaints.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

54. Following the September 12th meeting, WGU removed Dr. Bridgeman's access to her work emails and Sharepoint software.

55. WGU did not normally revoke email or Sharepoint access for employees on leave.

56. On September 13, 2022, Dr. Bridgeman emailed her complaint, with a detailed timeline about Manager Sinclair's racially discriminatory and potentially retaliatory behavior to Representative Pittman.

57. On or about September 22, 2022, Dr. Bridgeman saw that WGU had underpaid her again for her paid time-off.

58. Dr. Bridgeman immediately emailed Director Reed to request that her paycheck be corrected.

59. On or about September 29, 2022, WGU recognized Dr. Bridgeman for performance and demonstrated excellence in leadership principles by inviting her to attend a reception and sending her a gift.

60. On or about September 30, 2022, Representative Pittman informed Dr. Bridgeman that WGU's investigation had concluded her complaints about Manager Sinclair were "unsubstantiated."

61. Later that same day, Director Smart-Goggins scheduled a meeting with Dr. Bridgeman and HR Representative Taylor for October 3, 2022.

62. During the meeting on October 3, 2022, Dr. Bridgeman received her FY2022 annual performance evaluation and review.

63. The FY2022 performance review was largely positive and rated Dr. Bridgeman as "Exceeds/Solid Strength."

64. Director Smart-Goggins then terminated Dr. Bridgeman without any explanation.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

65. Dr. Bridgeman filed her Charge of Discrimination with the EEOC on November 15, 2022.

66. The EEOC issued Dr. Bridgeman a Notice of the Right to Sue on November 20, 2023.

<u>COUNT I –<br>DISPARATE TREATMENT IN VIOLATION OF TITLE VII</u>

67. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-66 as if they were fully set forth herein.

68. Title VII of the 1964 Civil Rights Act prohibits covered employers from engaging in intentionally discriminatory employment practices; these practices include "discharge[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

69. To establish a prima facie case of racial discrimination in violation of Title VII, a plaintiff must show: (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was otherwise qualified for her position, and (4) she was treated differently than a similarly situated employee not of that class. *See Marshall v. Wayne Cty.,* No. 22-1499, 2023 U.S. App. LEXIS 7693, at *4-5 (6th Cir. Mar. 30, 2023)

70. As a black woman, Dr. Bridgeman is a member of a protected class under Title VII. *See generally* 42 U.S.C. § 2000e–2(a)(1).

71. Dr. Bridgeman was subject to an adverse employment action when she was terminated on October 3, 2022.

72. Dr. Bridgeman was qualified for her position, as shown by her 2022 performance-based pay raise, her 2022 performance-based pay-bonus, the positive responses of her direct reports in a 2022 survey, and the results of her 2022 annual performance evaluation.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

73. Dr. Bridgeman was repeatedly treated less favorably than those outside of her protected class.

74. Dr. Bridgeman was required to perform significantly more work than her white counterparts, including submitting weekly schedules, being assigned more direct-reports, attending CRD meetings, performing evaluations, as well as completing new hire training, while managing her regular workload.

75. Dr. Bridgeman was subjected to stricter scrutiny and harsher discipline than her white counterparts, including being accused of "job abandonment" after complying with WGU's sick leave policy as well as being reprimanded despite following the weekly schedules approved by her manager.

## COUNT II –
## RETALIATION IN VIOLATION OF TITLE VII

76. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-66 as if fully set forth herein.

77. Title VII prohibits any covered employer from retaliating or discriminating against any employee who engages in protected activity under the statute. *See* 42 U. S. C. § 2000e–3(a).

78. To prevail on claim for retaliation in violation of Title VII, an employee must show: (1) that she engaged in protected activity under Title VII; (2) that the defendant knew of her protected activity; (3) that the defendant took adverse action against her thereafter; and (4) that a causal connection exists between the protected activity and the materially adverse action. *See EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015).

79. Protected activity broadly includes reporting or complaining to management and other employees about discriminatory actions in the workplace. *See Niswander v. Cincinnati Ins.*

10

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

*Co.*, 529 F.3d 714, 721 (6th Cir. 2008); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009).

80. Dr. Bridgeman repeatedly engaged in protected activity throughout August 2022 and September 2022, when she emailed multiple reports and complaints to WGU about Manager Sinclair engaging in retaliation, discrimination, and harassment, as well as subjecting her to a hostile work environment.

81. WGU was plainly aware of Dr. Bridgeman's engagement in protected activity; Dr. Bridgeman emailed her complaints directly to multiple decisionmakers at WGU.

82. These decisionmakers included members of WGU leadership, like President Pulsipher, Senior Manager Munday, Vice President Reed, and Director Smart-Goggins, as well as representatives working in WGU's Human Resources Department and People & Talent Department.

83. For Title VII retaliation claims, adverse employment actions consist of any actions which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)(same).

84. WGU took an adverse employment action against Dr. Bridgeman when it terminated her on October 3, 2022.

85. A plaintiff can satisfy the final element of her *prima facie* burden, causal connection, by showing a close temporal proximity or that "the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 349 (6th Cir. 2021)(quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020))(internal quotations omitted).

Case 3:24-cv-00183    Document 1    Filed 02/16/24    Page 11 of 18 PageID #: 11

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

86. In the Sixth Circuit, a temporal proximity of less than two months between the protected activity and the adverse employment action is generally sufficient to satisfy the *prima facie* burden for Title VII retaliation. *See Barrow*, 773 F. App'x at 264 ("For example, a two-month lapse between a plaintiff's protected activity and occurrence of the materially adverse action may be sufficient to satisfy a plaintiff's prima facie case of retaliation.")

87. Plaintiffs can also show a causal connection by coupling temporal proximity with evidence of "additional discrimination occurring between the date at which the employer learned of the protected activity and the date of termination or other adverse employment action." *Barrow v. City of Cleveland*, 773 F. App'x 254, 264 (6th Cir. 2019) (quoting *Mickey v. Zeidler Tool & Die Co*, 516 F.3d 516, 526 (6th Cir. 2008)).

88. In this case, Dr. Bridgeman was terminated less than three weeks after sending her final complaint about discrimination and retaliation to Representative Pittman.

89. Therefore, there is a close temporal proximity between Dr. Bridgeman's engagement in protected activity and her termination from WGU.

90. After her engagement in protected activity, WGU subjected Dr. Bridgeman to increased scrutiny as shown by WGU's decision to interrogate Dr. Bridgeman about Manager Sinclair's allegations against her. *See Hamilton v. General Electric Co.*, 556 F.3d 428, 436 (6th Cir. 2009)(finding that an increase in scrutiny combined with temporal proximity is sufficient for a prima facie showing of causation).

91. WGU engaged in additional discrimination against Dr. Bridgeman when it departed from its normal operating procedures and removed Dr. Bridgeman's access to her work emails and SharePoint. *See George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020)

12

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

92. Finally, WGU plainly engaged in additional discrimination when it underpaid Dr. Bridgeman on her two subsequent paychecks.

93. WGU's decision to terminate Dr. Bridgeman following her engagement in protected activity constitutes retaliation in violation of Title VII.

<u>COUNT III-</u>
<u>RETALIATORY HARASSMENT IN VIOLATION OF TITLE VII</u>

94. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-66 as if fully set forth herein.

95. Retaliation in violation of Title VII also includes retaliatory harassment or subjecting an employee to a hostile work environment because the employee engaged in protected activity. *See* 29 U.S.C. §2000e-3(a)

96. To establish a *prima facie* case of retaliatory harassment, or a hostile work environment motivated by an employee's protected activity, a plaintiff must demonstrate the following: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to employer; (3) the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the harassment. *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)

97. Dr. Bridgeman engaged in protected activity in January 2022, when she participated in WGU's investigation into report of discrimination by Manager McShea.

98. Dr. Bridgeman continued to engage in protected activity in February 2022, when she pursued her own internal complaint with WGU about Manager McShea's racial discrimination and retaliation.

99. WGU was plainly aware of Dr. Bridgeman's engagement in protected activity because Dr.

13

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

Bridgeman submitted her formal complaints about Manager McShea to a representative from WGU Human Resources department and Vice President Welter.

100. In the Sixth Circuit, retaliatory harassment is considered sufficiently severe and pervasive when it would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Davis v. Metro Parks & Rec. Dep't*, 854 F. App'x 707, 718 (6th Cir. 2021).

101. From June 2022 to September 2022, WGU engaged in a series of punitive actions that were clearly sufficient to dissuade reasonable employees from engaging in protected activity.

102. First, WGU disbanded Dr. Bridgeman's Educational Leadership team and transferred Dr. Bridgeman to the Curriculum & Instruction team, effectively separating her from a majority of the co-workers she had worked with for years.

103. Second, immediately after the transfer, Manager Sinclair substantially increased Dr. Bridgeman's workload, and required her to attend more meetings, manage additional training, evaluating, and reporting requirements, and oversee more direct-reports than other supervisors.

104. Third, Manager Sinclar subjected Dr. Bridgeman to stricter scrutiny and unwarranted criticism and reprimands when she failed to meet these artificially high standards.

105. A plaintiff can demonstrate the final element, a causal connection, by showing temporal proximity and evidence that the "defendant treated the plaintiff differently from similarly situated employees." *See George*, 966 F.3d at 460.

106. Approximately three months passed between Dr. Bridgeman's complaints about Manager McShea and the commencement of WGU's campaign of retaliatory harassment.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

107. This temporal proximity is sufficient, when coupled with additional evidence, to show a causal connection. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (indicating that three months is sufficient to show temporal proximity).

108. In addition to temporal proximity, WGU's retaliatory harassment singled-out Dr. Bridgeman from her fellow similarly-situated supervisors for substantially different treatment.

109. For example, unlike other supervisors, Dr. Bridgeman was required to attend CRD meetings and submit weekly schedules to Manager Sinclair.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Chontel Bridgeman prays for relief as follows:

1. A declaratory judgment that the practices complained of herein are unlawful under Title VII;

2. An award of money damages for lost wages, pre-judgment and post-judgment interest, and penalties in an exact amount to be determined at trial.

3. An award of costs and expenses incurred in this action, including reasonable attorney's fees and expert fees; and

4. Any and all such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

February, 16, 2024                                   Respectfully Submitted,


                                    *s/ Alan Crone*
                                    _____

                                    Alan G. Crone, TN Bar No. 014285
                                    Philip Oliphant, TN Bar No. 025990
                                    THE CRONE LAW FIRM, PLC
                                    88 Union Avenue, 14th Floor
                                    Memphis, TN 38103
                                    901-737-7740 (voice)
                                    901-474-7926 (fax)
                                    acrone@cronelawfirmplc.com
                                    poliphant@cronelawfirmplc.com

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

## <u>DECLARATION & VERIFICATION</u>

I, Chontel Bridgeman, verify and declare that the facts stated in the foregoing Verified

Complaint for violations of Title VII are true to the best of my knowledge and belief, and that the

Complaint was not made out of levity or by collusion with Defendant but in sincerity and truth

for the causes mentioned in the Complaint.

*Chontel Bridgeman*

_____

Chontel Bridgeman

02 / 16 / 2024
_____

Date

17

Doc ID: 97ec0fb278001df2c6ea376a19cbc37ee6510b8b

 **Dropbox** Sign

| | |
|---|---|
| **Title** | For Immediate Signature: Chontel Bridgeman Title VII... |
| **File name** | 02162024- Bridgem...ng Signature).pdf |
| **Document ID** | 97ec0fb278001df2c6ea376a19cbc37ee6510b8b |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **02 / 16 / 2024**<br>12:34:52 UTC-6 | Sent for signature to Dr. Chontel Bridgeman<br>(chontel.bridgeman@gmail.com) from jlc@cronelawfirmplc.com<br>IP: 173.166.195.225 |
| **VIEWED** | **02 / 16 / 2024**<br>12:36:01 UTC-6 | Viewed by Dr. Chontel Bridgeman<br>(chontel.bridgeman@gmail.com)<br>IP: 174.202.194.101 |
| **SIGNED** | **02 / 16 / 2024**<br>12:36:36 UTC-6 | Signed by Dr. Chontel Bridgeman<br>(chontel.bridgeman@gmail.com)<br>IP: 174.202.194.101 |
| **COMPLETED** | **02 / 16 / 2024**<br>12:36:36 UTC-6 | The document has been completed. |